C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
JOSE LANDAVERDE,                                            :
                                                            :   **ORDER**
                          Movant,                           :
                                                            :   21-cv-4403 (BMC)
              - against -                                   :   10-cr-0531 (BMC)
                                                            :
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                          Respondent.                       :
------------------------------------------------------------ X

**COGAN**, District Judge.

    Movant seeks relief under 28 U.S.C. § 2255 from his conviction by guilty plea on the morning of trial (after jury selection) and his subsequent sentence for one count of conspiracy to commit Hobbs Act robberies of drug traffickers (18 U.S.C. § 1951(a)) and one count of conspiracy to contribute 5 kilograms or more of cocaine (21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(ii)(II)). I accepted the parties' plea agreement under Fed. R. Crim. P. 11(c)(1)(C), which required a sentence of 168 months' custody and five years' supervised release. That was substantially below movant's Guidelines range of 360 months to life in custody.

    The facts relating to the crimes to which Landaverde pled guilty are not material to this motion, but just by way of background, he was a member of a violent robbery crew that targeted drug dealers across many states; indeed, Landaverde participated in about 24 robberies, thirteen of which involved assaulting, restraining or torturing victims, two kidnappings, and four committed while impersonating police officers. The robberies also involved numerous shoot-outs.

    Once indicted, Landaverde was on the lam for nearly eight years before he was finally arrested in North Carolina living under an assumed name.

Landaverde raises two points of error in the instant motion, both of which allege ineffective assistance of counsel: (1) his counsel should not have allowed him to plead to the two conspiracies because they were actually one conspiracy, and thus he was subjected to "double jeopardy"; and (2) his counsel should have pursued a speedy trial motion, or, at least, should have advised him that he could plead guilty and preserve the speedy trial issue for appeal. Neither of these claims have merit.

As to his first point, the law is well settled that a mere overlap in the circumstances leading to multiple conspiracies does not mean that the Government can only charge one conspiracy. Landaverde engaged in two separate conspiracies – first, conspiring to forcefully take property from drug dealers; and, second, to the extent those robberies included not just cash (as they usually did) but cocaine, a separate conspiracy to sell and distribute the cocaine. The Hobbs Act does not punish drug distribution conspiracies, and the Controlled Substances Act does not punish robbery conspiracy. The fact that Landaverde stole cocaine and then proceeded to sell it does not mean there was only one conspiracy. Cf. Albernaz v. United States, 450 U.S. 333, 343 (1981) (conspiracy to import drugs could be prosecuted separately from conspiracy to distribute drugs, even if both conspiracies involved the same drugs). Landaverde's indictment therefore did not raise any issue of multiplicity, and his counsel could not have been ineffective for failing to make a losing motion.

As to Landaverde's speedy trial claim, having nearly presided over his trial (but for his change of plea) and having accepted his guilty plea and imposing the sentence under the Rule 11(c)(1)(C) agreement, there is no room for doubt that Landaverde voluntarily gave up his speedy trial motion in exchange for a sentence that was substantially below the Guidelines. That was the whole point of the Government's plea offer.

The speedy trial motion was heavily litigated before me, although I reserved decision pending the outcome of the trial. Landaverde's argument was that the Government did not demonstrate enough diligence in pursuing him over the nearly eight years that he was a fugitive. Although the Government had taken numerous steps over the years to find and arrest him, the motion was not entirely without merit, and the Government recognized that.

I learned at the sentencing, not surprisingly, that the pendency of the motion was a major factor in the Government's agreement to a Rule 11(c)(1)(C) agreement that went so far below the Guidelines for such violent and socially destructive conduct. I found the parties' compromise to be reasonable then and there is nothing in Landaverde's current motion that makes me reconsider that balance.

Landaverde's appointed attorney, Nicolas Bourtin, who is a former federal prosecutor and a highly regarded criminal law practitioner at one of the nation's leading law firms, has submitted an affidavit at my request responding to Landaverde's allegations. He explains that when he came into the case (to replace counsel who had a "breakdown in communications" with Landaverde), the Government's proposed plea agreement required a 188-month prison sentence. After aggressively litigating the speedy trial motion, the Government improved its offer to 168 months' custody, but the prosecutor made it clear to Mr. Bourtin that the offer had to include Landaverde's waiving his speedy trial claim, as well as that this was the Government's final plea offer.

Mr. Bourtin further explains that upon obtaining that plea offer, he and an associate met with Landaverde for more than 1 1/2 hours while Landaverde was in custody. He explained to Landaverde that if he were to continue to trial, be convicted, and the speedy trial motion denied, Landaverde would have the right to appeal his conviction, including the denial of the speedy trial

3

motion. He also advised Landaverde of how long an appeal would take (during which Landaverde would almost certainly remain in custody).

Significantly, Mr. Bourtin avers that Landaverde asked him whether he could take the guilty plea but preserve the speedy trial issue. Mr. Bourtin explained to him that giving up the speedy trial issue was an essential part of the plea offer, and that the Government had made its final offer. Landaverde then instructed Mr. Bourtin to accept the plea deal on his behalf.

Mr. Bourtin again met with Landaverde in preparation for the guilty plea hearing for nearly two hours. He went over the plea agreement with him line by line, including the provision of the plea agreement stating that "[t]he defendant withdraws his First Motion to Dismiss on Speedy Trial [Grounds] (ECF No. 376) and waives all claims related to violations of the defendant's Sixth Amendment right to a speedy trial." Landaverde, according to Mr. Bourtin, specifically stated that he understood that he was both surrendering his speedy trial motion and his right to appeal by entering into the plea agreement.

Mr. Bourtin acknowledges Landaverde stating that he didn't like either of his options – entering in the plea agreement or proceeding to trial. Landaverde expressed his belief that he could not win at trial, and asked Mr. Bourtin to seek to postpone the trial. Mr. Bourtin advised him that with the jury having been selected, it was "extraordinarily unlikely" that he could get the trial postponed. Mr. Bourtin repeated the advice he had provided last time they met, that is, that if Landaverde didn't want to accept the plea agreement, Landaverde could raise the speedy trial issue on appeal.

After an extended discussion, in which Landaverde continually expressed his unwillingness to proceed to trial, he agreed to accept the Government's revised plea offer.

Everything in Mr. Bourtin's affidavit is consistent with the transcript of the plea hearing and sentencing. As he told me during the plea hearing, ""as the Court is aware, this has been a hard-fought litigation leading up to trial here. The defendant has, we believe, real credible motions, as I think your Honor has acknowledged. And given all that, we believe this is an appropriate resolution." I asked specifically whether he had explained to Landaverde that acceptance of the plea agreement meant that he could no longer pursue his speedy trial challenge, to which Mr. Bourtin answered, "We have, your Honor."

At the sentencing hearing, Mr. Bourtin continued expressing the view he had expressed to his client that he had been "optimistic" as to the "meritorious speedy trial motion" that the Court "should have granted . . . and, if not, we had very strong arguments on appeal." The sentencing went forward pursuant to the plea agreement and I sentenced Landaverde accordingly without any objection.

It is therefore clear that Mr. Bourtin could not have been ineffective in failing to preserve the speedy trial issue because that was a deal the Government simply wasn't going to offer. Landaverde's options were just what Mr. Bourtin told him: go to trial and, if convicted, continue to press the speedy trial issue, or take the plea agreement, including its express waiver of that claim. Mr. Bourtin fully advised Landaverde of his options, and it was Landaverde's choice to accept the agreement.

On this record, there is no need for an evidentiary hearing. Although the case involves, to some extent, off the record conversations between a defendant and counsel, Landaverde has not submitted any affidavit to support his claims or dispute those in Mr. Bourtin's affidavit.

5

Even treating his unsworn memoranda as affidavits in light of his *pro se* status[1], they contain nothing but conclusory assertions, and neither of them were submitted in reply to Mr. Bourtin's affidavit. Mr. Bourtin's affidavit, in contrast, is not only very specific as to his discussions with Landaverde, but the affidavit is fully consistent with contemporaneous memoranda prepared by Mr. Bourtin's associates who accompanied him to each of the meetings he has described in his affidavit. Thus, the papers submitted are sufficient for me to rule on this motion. See Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001).

Landaverde has failed to demonstrate any merit to his claims. The motion is accordingly denied. Pursuant to 28 U.S.C. § 2253(c)(1) and Rule 11(a) of the Rules Governing Section 2255 Proceedings, I decline to issue a certificate of appealability because Landaverde has not made a substantial showing of the denial of a constitutional right. Finally, I certify that, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal taken from this decision would not be taken in good faith. Thus, leave to appeal *in forma pauperis* is denied.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
October 17, 2022

---

[1] Although Landaverde is proceeding *pro se*, it seems clear that his papers were prepared not by him, but by someone with significant legal experience. That does not disentitle Landaverde from the special solicitude afforded to *pro se* litigants.